May it please the Court. My name is Gautam Dutta, and I represent Plaintiff and Appellant Paul Merritt, who is here today. I'd like to reserve five minutes for rebuttal. Two days ago, voters in California and across the nation went to the polls, and Californians will return to the polls in March next year for California's presidential primary. In a time when media conglomerates like Facebook curate what we see and read, voters cherish the opportunity to hear directly from the candidates, and they especially value the candidates' statements in the voter guides. Sacred space, which, as the Court in Gay-Bert v. Patterson noted, quote, carry greater weight in the minds of voters than normal campaign literature. This is Gay-Bert, Pinpoint, 186, CA 3, 874. This case bears critical import against such a backdrop. In Chamniss v. Bowen, this Court expressly held that a candidate has the right to state in his or her candidate statement that he or she is independent. And didn't your client get to do that? In fact, a number of times in the paragraph mentioned that he was independent. Can I cut to the chase on one of the issues that I keep coming back to, which is the form that he had to check? And I'm looking at the form, and it says, pursuant to Section 8002.5, select one of the following. And it's either party preference, and that's if you're affiliated with a party, or none. And he did check none, right? So that's how he got the no party, right? Your Honor is referring to, there are two different, there's a very important distinction to bear in mind here. One is the content of the ballot, and how the candidate appears on the ballot. I'm talking about the declaration of candidacy, which is really how it, really the dispute is that he hand wrote in registered independent voter with an asterisk, but the asterisk doesn't link back to any place on that form. And there's either you're, he's not affiliated with a party, right? He is not, he was not a candidate with a quote qualified party, a state recognized party. Right, got it. But you have to be a registered voter to be a candidate, right? Yes. So they're all registered voters. So if we just assume everybody's a registered voter, so then the difference is party preference none, or independent. That is with respect to the party registration, but what we're talking about here is the content of a candidate's statement that appears in the voter guide. Great. But on that, he's, as Judge Kendall said, he checks no party preference, correct? No, that was on the form. Well, I understand. He checks no party preference on the form. Yes, that's correct. Elsewhere, he did write in independent, but on the statement that he provided to the Secretary of State, there he stated in the first line, independent registered voter. Correct, but the Secretary of State, so the first thing that happens is he checks one of the boxes and you're not challenging either the form of that form or his check on that box, correct? Our position is it's not relevant. Okay, that's fine. When it comes to the intended statement. And he puts a heading in his statement as a candidate, correct? That is, and he intended for the entire statement to be published verbatim in the voter guide. I understand, but why doesn't the Secretary of State have the discretion to determine that the format needs to be uniform and it doesn't need to have headers? The Secretary of State certainly has the discretion to designate a format such as the Secretary of State did to have it correspond to the ballot. However, our position is that regardless of the formatting the Secretary of State wanted, my client had a right to have his entire statement be printed verbatim below that. So the Secretary of State had the discretion to say Paul Merritt, no party preference, but below that he had a legal obligation to print in total. So what's missing? Because it says elect an independent senator, Merritt, elect an independent thinker, so we have two independents there. And then at the end it says Merritt is independent for all citizens. What is missing out of what he provided to them? What is missing is the first line. And when a voter looks at it. What's the first line? Is California make history, elect an independent Senator Merritt? Our position is that our first line is Paul Merritt, registered independent voter. And we're here on a motion to dismiss. And any factual disputes must be resolved in favor of the plaintiff. What's the factual dispute? Whether Mr. Merritt intended that first line to be printed in the booklet. Well, let's assume he did. But let's also, that then makes it a legal question, doesn't it, as to the authority of the Secretary of State to have uniformity in its ballot statements. Well, the legal question is whether the Secretary of State had the legal right to remove that word independent. Because in Chambliss, this Court said that the State had the right to not allow a candidate to say that he or she was independent. And instead, you know, had to use the phrase no party preference. Because there was what the Court called an alternative way to express his views through a candidate statement distributed prior to the election. This is from Chambliss 308F3rd at Pinpoint Site 1016. But the distinction is he does say he's independent a number of times, as I just pointed out, right? Yes, Your Honor. However, the critical, you know, none of those references at independent should have been deleted. Not one of them. And it's true that the – Well, none of them were deleted. The only thing we're talking about here is a heading. So my other question is would your client have had the opportunity to seek a mandate on that? That's a good question. So under the statute for that, which is Elections Code 9092, you go for mandate when you're challenging the content, and the content has to be if something in the statement is false, misleading, or inconsistent with the Elections Code. Now, what's important about the Elections Code 1992 and its companion statute, General Government Code 88006, is that it's not the exclusive way for a candidate to seek a remedy, number one. It refers to electors, which is obviously voters, all voters. And your client is a voter. He is a voter. Okay, let's just stop there so we can then move through the different codes. So he would have had the opportunity under Section 9092 to go in and say, this is misleading or incomplete because this statement is not correct, correct? Yes, but that's not the exclusive form. No, but that's not my question. The question was yes or no, would he have had that opportunity under 9092? He has that opportunity to challenge it under state law. And he chose not to do that. He chose not to do that because he had a right to seek relief by invoking federal law in federal court. And there it is not just – But, I mean, you know, as a practical matter, if you really think this is important and you're running, so he waits until the election is over, right? And then he files this lawsuit. Is that right? He first filed a temporary restraining – for a temporary restraining order. Right. I'm not saying that he can't come to federal court. I'm just saying that we kind of work through the California Election Code here. The Election Code 9092 deals with the printing of the candidate statement. Now, the harm, the irreparable harm that occurs, you know, occurs once it's printed and distributed to the voters. So that's, you know, that is an opportunity there. But it's our position that you can also go to federal court to challenge it and also under the – And I don't disagree with you. We're just trying to understand the state code. But I'm not saying he doesn't have a right to come here and make the claims. May I go to that irreparable harm concept? So we agree that he doesn't have a party affiliation under one of the parties. And we agree that all candidates have to be registered voters. So what harm was there? There's nothing that is confusing or would deceive a reader that he's independent, especially, as I mentioned. He mentions it a number of times. And it says he doesn't have a party. And we know he's a registered voter. Where is there going to be any harm in this statement? Well, the harm is that a critical reference to my clients being independent has been removed. And that's at the top, at the very top of his statement. Now, that's – as we've set forth in our papers, that constitutes viewpoint discrimination. But there's nothing that is left out. You just agreed with me that he's got to be a registered voter. Everybody does. And he's not affiliated. So what is left out? There's nothing. It says that he is a registered independent voter. Now, the word independent has some – has value to a voter. It has a positive connotation. Let me just ask you, under your theory then, anyone else who's a candidate, say Paul Smith, he would be able to put in a heading that says Paul Smith, Democrat. And then Margaret Smith could put in one that says Margaret Smith, Republican or Libertarian or whatever the qualified parties were. So what you're really asking is everybody gets to put in a heading if they want. And if you don't let them put in the heading, that you have violated their First Amendment rights. Everyone has a right to put in their own heading. Now, as I mentioned, the Secretary of State has leeway to put in, on the very top, its own preferred heading. That actually brings up the issue that there were no such guidelines promulgated by the Secretary of State with regard to headings, nothing of the sort. There was no issue – there was no formal requirements that were set forth about what the statement could or could not do or could or could not contain. Now, under Elections Code 9084, it states that each statement can only be up to 250 words. It states that you have to pay the required fee. And it finally – and it also states that you can't refer to your political opponents. That's it. There's nothing else. And there's nothing else in the record about any other regulation that governs the voter guide. And how many words did he pay for? Is putting that line in breaking the 250? No, not at all. Okay. Not at all. And, in fact, that's an issue where we put in an evidentiary objection as to, you know, as to the significance of what the amount was. But he never exceeded the 250 guideline. That is not in dispute. I still keep going back to the form that – why did the little asterisk, registered independent voter, circled? It didn't apply to anything else. It didn't go anywhere else. And it seems to be that that is the heading of his statement on the page of the application. This is what I want printed in the book. I want Paul Merritt, registered independent voter. But he doesn't have an option to do that. He doesn't write on there, I don't want to be listed as party preference, none. And he actually checks party preference, none. And then he puts that in there. So it's just very – there was no direct attempt to make a distinction on this form or seek out help on this form. And yet it's not confusing that he's independent. Well, you're on, I guess, on excerpts of record page 206. Okay. There is the exact statement that Mr. Merritt submitted. Right, I'm looking at it. To the Secretary of State. Right. And there it's very clear how he wants it to be portrayed, how he wants his statement – what wording he wants in his statement that he's paying for. And at the top it says, Paul Merritt, registered independent voter. Okay. Do you want to save your remaining time for rebuttal? Yes, Your Honor. Thank you. Good morning, Your Honor. Good morning. May it please the Court, Peter Chang on behalf of Respondent, Secretary of State. This case is about whether appellant candidate can dictate the content of the label that's placed in the header that precedes his candidate statement. This is not about what goes into the candidate statement itself. So I thought that's what it was about, too, until this oral argument when he's saying that on that form, that first line says, Paul Merritt, space, space, space, space, registered independent voter. So now what he's saying is you excise that from my statement. Do you disagree? I think that is appellant's argument. It's one that they have come up with. But it's one that's controverted by appellant's own allegations. Appellant's own allegations in the complaints allege that the Secretary of State substituted the label that he wanted for the label no party preference. And his own complaint alleges that the Secretary of State altered the label, his statement, by using the phrase no party preference instead of the phrase registered independent voter. And that's how the district court had construed the allegations in the complaints as well. So appellant's own complaint shows, alleges, and it's assumed to be true for purposes of the motion to dismiss, that his complaint here is that the Secretary of State did not print the registered independent label that he preferred, but instead used the header no party preference. Would your argument change if his claim is that somehow the label that we're now talking about is really part of his candidate's statement? If the label is actually part of the candidate's statement, and if that were true and it's proven to be true, then yes. The argument would change because he can put that in his candidate's statement. If he wants to say, as part of his candidate's statement, if he wants to say he's a registered independent voter, he can do so. Can he start his candidate's statement with that statement? Like big, bold, registered independent voter? Well, the formatting would be all consistent, so he wouldn't be able to bold or underline or highlight any phrases, but he can put in the phrase registered independent voter inside the candidate's statement. One of his arguments is, well, where does it say that? There's no guidelines that say you can't put in a heading, you can't bold, you can't underline, you can't italicize. So how is he supposed to divine what he can and can't do? Well, as far as what's actually inside the candidate's statement, I think that's just a matter of what's considered reasonable. Is it reasonable for the Secretary of State to make all the candidate's statements to have consistent formatting? That the text is unchanged, but the formatting is all the same. He said, well, you did change my text. You took out my heading. Well, here where the heading that precedes the candidate's statement is not part of the candidate's statement, and I think that issue is actually relied by his own allegation. If he wants to say that he's a registered independent voter, he can do that as part of his candidate's statement. But the way, you know, looking at Excerpt of Record 206, his submitted statement, he clearly, you know, now we're looking beyond the allegations, but he clearly intended that to be the header that's placed above the candidate's statement, and that's how the Secretary of State's office took it as well. They didn't charge him for those words. They didn't consider that to be part of his candidate's statement. Well, it certainly isn't a statement in that it isn't a sentence with a period or a verb. It just is his name, and then there's a number of spaces, maybe six, seven spaces, and then the title, right? Correct. Correct. It's the same format. And they didn't charge him for those? They didn't charge him for those words. That's what I thought. Okay. And it's the same format that the Secretary of State uses for the header that precedes the heading. And so this case is really about whether the appellant has a constitutional right to use, to place whatever label or language he wishes next to his name in the header above his candidate's statement. So do you think if he had a complaint about it, he could have gone through the state process to challenge it and get a change before it was published? Correct. He was aware, based on his own allegations in the letter that he submitted, he attached the part to his complaint, he was aware that the Secretary of State was going to print the label, no party preference in the header above his candidate's statement, instead of his preferred label within the display period. So he gives, or you give, your client gives him that draft or whatever? There's nothing in the, well, the only thing in the record is that he learned from the, I believe it was the Los Angeles County Registrar's Office. Got it. That the no party preference label was going to be applied to him. Okay. And it's not, that's the only factual allegation we have here, is that he learned, possibly through the L.A. Registrar's Office, at the beginning of March, during the display period, and during the time when he could have brought a petition for writ to change the language in the Voter Information Guide, that the Secretary of State was going to use no party preference label to him. Could he have taken what we're now calling a label and put it as the first sentence of his candidate guide in bold? Not in bold. Because that's not permitted for uniformity? Correct. For uniformity, it's just, it would just be plain text. But he could put it in the very first thing of his text. He could. Should he desire. Yes. Yes. It would be, I mean, it would be misleading because there are no registered independent voters in California. No voter can register as an independent. It would be misleading, but it would be printed in his candidate statement. So it wouldn't, the Secretary of State wouldn't be taking it out because it thought it was misleading if he put it in his text? No. Because he puts throughout his statement the independent voter statement. Correct. The issue, the reason that the register independent voter phrase or label or term was taken out was because the understanding was that the appellant wished to use that as the header that precedes his candidate statement. Thank you. And as, you know, and clearly here, there's no, the placement of the no party preference label is not based on Mr. Merritt's viewpoint. That's based on the fact that he declined to disclose a preference for a registered political party or a qualified political party in California. And that's also indicated on his, on his candidacy declaration form, as your honors pointed out. So, you know, the Secretary of State placing that no party preference label is, is completely reasonable here. It's a label that's consistent with the label to be placed next to his name on the ballot. So the voters were to take the candidate to the, take the voter information guide with them to the ballot box. They see the listing of the candidate statements in the header space. They see the candidate. They see the label that's placed next to the candidate's name. And that's consistent and conforms with the candidate's name and the label that's placed next to the candidate's name on the ballot. And I assume you would agree with him that he didn't have any obligation to go through California Code Section 9092 to basically seek a mandate at the time that this was printed. He could, he could have. But he didn't have any obligation, is that right? No, he didn't have, I mean, it's, it's unclear whether he's, there's no obligation for him to require the Secretary of State to, there's no obligation for him to require the voter information guide to be printed a certain way. He can choose to challenge how the voter information guide would be printed. He chose not to. But there's no, there's no obligation for him to. It's, it's a, it's a procedural mechanism that the California Elections Code affords candidates and the electorate, anyone, to challenge anything in the voter information guide. If it's misleading or if it's inaccurate. But no one, no one is obligated to challenge. And here the label no party preference is not misleading or inaccurate as applied to the appellant. So, I mean, if the, the court has no further questions, respondent, respondent believes the appellant's claim lacks merit and the court should affirm the district court's dismissal of the, of the, of the appellant's claims. Thank you.  In my remaining time I'll try to make some very quick points. This, this case comes down to a factual issue that cannot be decided on a motion to dismiss. Namely, whether or not my client wanted the entirety of his statement in Excerpts of Record 206 to be published. And I would note at the bottom it says that he refers to the above statement for election. So he's referring to the entire statement including that first line. I'd also note on, on that, that in the third amended complaint in paragraph six, we refer to the top of the candidate's statement. Again, we, this is something that my client wanted, wanted to be published in its entirety. We renew our evidentiary objection with regard to the issue of what was charged to my client. Because what matters here, first, as, as our papers mentioned, that argument was brought up in reply papers improperly. But second of all, that does not reflect what Mr. Merritt intended for his statement. He wanted the whole statement to be published. The bottom line is the statement, the Secretary of State had no authority to censor my client's statement. And he, if, the mechanism for him to have done anything would have been under Elections Code 19, 1992. And even then he wouldn't have prevailed because there's nothing misleading, nothing false about a label of registered independent voter. Particularly when Chamness expressly stated that my, a client like mine who is not affiliated with any qualified party has the right to state that he is independent in a candidate's statement. But he's not a registered independent. I mean, that is, that is a, unfortunately it's a fiction that doesn't exist in California, correct? It might exist in other states. It currently does not exist. That is, that is true. But this is sacred space. And in Chamness, this Court stated that what, precisely that because the ballot is so, is more, the state is allowed to be much more restrictive, that the, the candidate is given much more latitude in the candidate voter guides. Thank you. The last, the only last thing I'd say is that the deadline for candidates to purchase space for the upcoming March election is December 6th. We have that in mind. Thank you. Your client has two law degrees, right? My client states here that he has two law degrees. That's, that, I mean, I don't want to go beyond what's, what's in the record. But it's true that's what's stated here is that he has two law degrees. Okay. Thank you. Thank you. Thank you both for your argument this morning. The case of Merritt v. Padilla is submitted.
judges: Farris, McKeown, Kendall